IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CRIS CHRISTENSON, CONNOR CHRISTENSON, ACCO UNLIMITED CORPORATION, and ANDREW C. CHRISTENSON REVOCABLE LIVING TRUST,<br><br>        Plaintiffs,<br><br>v.<br><br>JAMES ALBERT, ELAINE OLSON, JONATHAN ROOS, DANIEL JESSOP, LEAH RODENBERG, and ERIKA ECKLEY,<br><br>        Defendants. | No. 4:25-cv-00434-SHL-SBJ<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUGMENT** |

Iowa Code § 68A.406(2)(a) prohibits most corporations from displaying signs on their property advocating for the election or defeat of specific political candidates. Plaintiffs view the law as a facially unconstitutional restriction on corporate speech, while Defendants see it as constitutionally acceptable part of preventing corporations from making direct contributions to political campaigns. For reasons explained below, the Court cannot say once-and-for-all which side's view of the law is correct. What the Court *can* say, however, is that Plaintiffs have not shown that the unconstitutional applications of the law substantially outweigh the constitutional ones, which is the lofty burden they must meet when making a facial constitutional challenge under the First Amendment. The Court therefore GRANTS Defendants' Motion for Summary Judgment (ECF 17) and DENIES Plaintiffs' Motion for Summary Judgment (ECF 9).

## I.    UNDISPUTED FACTS.

Acco Unlimited Corporation ("Acco") is an Iowa for-profit corporation owned by the Andrew C. Christenson Revocable Living Trust (the "Trust"). (ECF 16-2, ¶¶ 1–2.) One of the trustees of the Trust is Cris Christenson. (Id., ¶ 4.) Acco has a warehouse located at 5105 NW Johnston Drive, Johnston, Iowa. (Id., ¶ 5.) The Trust owns the real property where the warehouse is located. (Id.) Cris Christenson has at least some level of authority to make decisions on behalf of the Trust. (Id., ¶ 7.)

In Fall 2025, Cris Christenson supported a slate of candidates in connection with a school board election for Johnston Community School District Board. (Id., ¶ 8.) One of the candidates on the slate was his son Connor. (Id.) To support his preferred slate of candidates, Cris placed campaign signs on Acco's property, which is within the Johnson school district. (Id., ¶ 9.) The placement of these signs involved direct coordination between Acco and the candidates. (ECF 17-2,[1] ¶¶ 9–10.) On October 17, 2025, the Iowa Ethics and Campaign Disclosure Board (the "Ethics Board") received a formal complaint about the campaign signs "because they are a corporation but have displayed political signs on their property for three candidates." (ECF 16-2, ¶ 11; ECF 17-2, ¶ 12.) On October 21, 2025, staff with the Ethics Board contacted Cris regarding the Complaint. (ECF 16-2, ¶¶ 12–13; ECF 17-2, ¶¶ 13–14.) Cris said he "addresses this issue every year" and has received complaints from other candidates in the past. (ECF 17-2, ¶ 14.) After staff informed him of Iowa prohibiting corporations from displaying campaign signs, Cris said the property was mixed-use and that only four of eighteen acres were leased by Acco. (Id., ¶¶ 16–17.)

Staff contacted Connor two days later, on October 23, 2025, but he refused to commit to removing the signs. (ECF 17-2, ¶¶ 20–21.) On October 27, 2025, Ethics Board Executive Director Erika Eckley asked for Board authorization to initiate a formal investigation. (ECF 16-2, ¶¶ 11–14.) The following day, Cris finally removed the signs from the Acco property. (Id., ¶ 15.) Before the signs were removed, Ethics Board staff drove to the property three times to view the location of the signs. (ECF 17-2, ¶¶ 22–24.) On each occasion, the signs were located near a fence running along the perimeter of the building and parking lot in locations that appeared to be corporate property. (Id., ¶ 23.)

The Ethics Board issued a public reprimand to Acco and Connor Christenson for violating Iowa law. (ECF 16-2, ¶ 25.) There was no public reprimand to the Trust or Cris Christenson. (ECF 17-2, ¶ 25.) During public deliberations leading up to the decision to issue the reprimand, Ethics Board members made comments to the effect that Cris Christenson and others engaged in acts of "defiance" by refusing to take down the signs quickly enough after being informed of the complaint. (ECF 16-2, ¶¶ 17–22.) One Ethics Board member described the public reprimand as a "consequence" and said future violations "will be dealt with swiftly." (ECF 16-2, ¶ 23.) The public reprimand itself states that "if future violations occur, the Board will act swiftly to enforce the laws

---

[1] Plaintiffs did not respond to Defendants' Statement of Undisputed Material Facts, and thus those facts are treated as undisputed. *See* Fed. R. Civ. P. 56(e)(2).

that apply to all candidates who run for public office." (ECF 16-2, ¶ 25.) If allowed to do so, Plaintiffs intend to post candidate campaign signs on the property in the future. (ECF 16-2, ¶ 26.)

Defendants are the members of the Ethics Board, as well as its Executive Director. (ECF 16-2, ¶ 10.) They are sued in their official capacities only. (ECF 16-2, ¶ 10.) Defendants assert that the display of outdoor campaign signs on corporate property is a form of "corporate contribution" to a campaign because outdoor sign advertising has market value in the Des Moines area. (ECF 17-2, ¶¶ 3, 6.) For example, Lamar Advertising offers outdoor sign advertising in the Des Moines area at rates of $800 per four weeks for poster billboards to $5,400 per four weeks for premium bulletin board locations. (Id., ¶¶ 7–8.)

## II.    PROCEDURAL BACKGROUND.

Plaintiffs' Complaint seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 based on the alleged unconstitutionality of Iowa Code § 68A.406(2)(a) under the First and Fourteenth Amendments. (ECF 1.) Although the Complaint could be interpreted as raising both facial and as-applied challenges to the law, Plaintiffs' counsel stated at the summary judgment hearing that Plaintiffs are solely raising a facial challenge. Both sides move for summary judgment. (ECF 9; ECF 17.) Although there are modest disputes of fact, none are material to the outcome.

## III.    LEGAL STANDARDS.

### A.  Summary Judgment Standards.

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Smith v. Ashland, Inc.*, 250 F.3d 1167, 1171 (8th Cir. 2001). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248)). "When cross-motions for summary judgment are presented to the Court, the standard summary judgment principles apply with equal force." *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 945–46 (S.D. Iowa 2005). "[T]he court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable

to defendant when considering plaintiff's motion." *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019).

B.  *Standard for Facial Constitutional Challenges*.

When a party seeks declaratory relief based on the facial unconstitutionality of a statute under the First Amendment, the district court must "determine a law's full set of applications, evaluate which are constitutional and which are not, and compare the one to the other." *Moody v. NetChoice, LLC*, 603 U.S. 707, 718 (2024). "The question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 723 (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). "So in this singular context, even a law with 'a plainly legitimate sweep' may be struck down in its entirety. But that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723–24. Facial challenges are "hard to win." *Id.* at 723.

IV.   **LEGAL ANALYSIS.**

A.  *At Least One Plaintiff, Acco, Has Standing.*

One of the threshold questions in any constitutional challenge is whether at least one plaintiff has standing. To establish standing, "a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). "This 'irreducible constitutional minimum of standing' requires a showing of 'injury in fact' to the plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'likely [to] be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Whether a plaintiff has shown such an injury 'often turns on the nature and source of the claim asserted.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "[T]he question whether he has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief." *Id.*

The standing analysis is complicated here because: (i) the Trust owns the land where the campaign signs were placed but was not reprimanded by the Ethics Board; (ii) Acco was reprimanded by the Ethics Board but does not own the land; (iii) Cris Christenson appears to have been the primary decisionmaker in connection with relevant events but does not directly own the business or the land, nor was he reprimanded by the Ethics Board; and (iv) Connor Christenson also does not own the business or land but *was* reprimanded by the Ethics Board, in his capacity as a candidate who "coordinated" with Acco and/or the Trust. Fortunately, the Court need not

4

wade too deeply into the nuances of each Plaintiff's circumstances because "[i]f at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). Thus, the Court will merely evaluate standing as to Acco.

For three interrelated reasons, the Court concludes that Acco has standing to bring the First Amendment challenge. First, although Acco does not own the property in question, it *occupies* the property as a commercial tenant. This is enough to bring Acco within the scope of Iowa Code § 68A.406(2)(a), which prohibits campaign signs on land that is, among other things, "occupied by a prohibited contributor." Thus, Acco has engaged in conduct directly affected by the statute. *See, e.g.*, *Willson v. City of Bel-Nor*, 924 F.3d 995, 1000 (8th Cir. 2019) (holding that plaintiff had standing to challenge portions of statute that applied to his conduct).

Second, Cris Christenson—who has decision-making authority for Acco—asserts that he intends to post campaign signs on the property in the future if permitted to do so, including in connection with the primary election in June 2026, general election in November 2026, and city/school election in November 2027. (ECF 9-3, p. 28, ¶ 11.) This assertion is credible given that signs have been posted on the property in past elections, including (but not limited to) the November 2025 election. As Cris told Ethics Board staff in October 2025, he "addresses [questions about campaign signs] every year" and has received complaints from candidates in the past. (ECF 17-2, ¶ 14.) In these circumstances, Acco has demonstrated a concrete intention to engage in future conduct affected by the statute.

Third, although Plaintiffs' Motion for Summary Judgment appears to disavow any request for relief based on the Ethics Board's past enforcement of the statute (see ECF 9-1, p. 15), the Board's past actions nonetheless have "predictive value" for whether Acco faces a concrete risk of future enforcement. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024); *see also Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 606–07 (8th Cir. 2022) (holding that standing existed based on historical enforcement activity). The "predictive value" is particularly high here given that the public reprimand to Acco states, "if future violations occur, the Board will act swiftly to enforce the laws that apply to all candidates who run for public office." (ECF 17-2, ¶ 25.) In these circumstances, Acco faces a concrete risk of future injury under the statute. *See Murthy*, 603 U.S. at 59. It therefore has standing.

*B. Plaintiffs Have Not Met the High Bar They Must Satisfy to Succeed on a Facial Constitutional Challenge Under the First Amendment.*

Although Plaintiffs could have pursued an as-applied challenge, they have elected to argue only that Iowa Code § 68A.406(2)(a) is facially unconstitutional. "[T]hat decision comes at a cost. For a host of good reasons, courts usually handle constitutional claims case by case, not en masse." *NetChoice, LLC*, 603 U.S. at 723. Plaintiffs can prevail on their facial challenge only by showing that "the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 724. For reasons explained below, Plaintiffs have failed to meet this high bar.

1. Statutory Background.

Iowa Code Chapter 68A is known as the "Campaign Disclosure Act." Iowa Code § 68A.101. It contains, among other things, provisions addressing: the organization and regulation of candidate and political action committees, *see id.* § 68A.201 *et seq.*; permissible uses of campaign funds and property, *see id.* § 68A.301 *et seq.*; independent campaign expenditures, *see id.* § 68A.404; disclosure requirements, *see id.* § 68A.405; restrictions on the use of taxpayer funds for campaign purposes, *see id.* at § 68A.405A; and "prohibited acts," *see id.* § 68A.501 *et seq.* It also contains the provision at issue here, Iowa Code § 68A.406, which is devoted entirely to campaign signs.

Section 68A.406(1)(a) allows campaign signs to be placed on residential property, property leased for residential purposes, "[a]gricultural land owned by individuals or by a family farm operation as defined in [Iowa Code § 9H.1];" and vacant lots and other property "owned by a person [or organization] who is not a prohibited contributor under section 68A.503." *Id.* Section 68A.406(2)(a) states that campaign signs may not be placed on government property, on any property without permission of the owner or lessee, or near polling places. As relevant here, it also states: "Campaign signs shall not be placed on any of the following . . . (2) Property owned, leased, or occupied by a 'prohibited contributor' under section 68A.503 unless the sign advocates the passage or defeat of a ballot issue or is exempted under subsection 1." *Id.*

In turn, Iowa Code § 68A.503(1) defines "prohibited contributor" to mean "an insurance company, savings association, bank, credit union, or corporation." Section 68A.503(1) states that prohibited contributors "shall not make a monetary or in-kind contribution to a candidate or committee except for a ballot issue committee." Similarly, section 68A.503(2) states that a candidate or committee "shall not receive a monetary or in-kind contribution from an insurance company, savings association, bank, credit union, or corporation." Prohibited contributors may,

however, "use money, property, labor, or any other thing of value of the entity for the purposes of soliciting its stockholders, administrative officers, professional employees, and members for contributions to a political committee sponsored by that entity and for financing the administration of a political committee sponsored by that entity." *Id.* § 68A.503(3). They also may use their own funds "to encourage registration of voters and participation in the political process or to publicize public issues," "to expressly advocate the passage or defeat of ballot issues," "for independent expenditures as provided in section 68A.404," and "to place campaign signs as permitted under section 68A.406." *Id.* § 68A.503(4). The word "corporation" is defined to include for-profit and non-profit corporations but not partnerships, limited liability companies, or other types of entities. *Id.* § 68A.503(7).

2. <u>Section 68A.406(2)(a) Is Not Facially Unconstitutional Under *Citizens United*.</u>

Plaintiffs' First Amendment challenge has two parts, the first of which is that section 68A.406(2)(a) is unconstitutional under *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). In *Citizens United*, a non-profit corporation wanted to make a political movie about Hillary Clinton available through video-on-demand during the lead-up to primary elections in 2008. *Id.* at 321–22. The corporation feared, however, that it would be subject to civil or criminal penalties under a federal law prohibiting corporations from, among other things, making independent expenditures advocating for the election or defeat of a candidate. *Id.* at 321, 337. *Citizens United* characterized the law prohibiting independent expenditures as a "ban on corporate speech" and struck it down under the First Amendment after applying strict scrutiny review. *Id.* at 337, 340. *Citizens United* also, however, upheld disclaimer and disclosure requirements against an as-applied challenge. *Id.* at 367. This was because, among other things, "disclosure is a less restrictive alternative to more comprehensive regulations of speech" and "the public has an interest in knowing who is speaking about a candidate shortly before an election." *Id.* at 369.

*Citizens United* did not directly address the constitutionality of laws prohibiting direct contributions from corporations to political campaigns. Instead, the governing case on that issue is still *Federal Election Commission v. Beaumont*, 539 U.S. 146, 162 (2003), which rejected an as-applied First Amendment challenge to such a law after applying a less exacting standard of review than strict scrutiny. Under *Beaumont*, the relevant test is whether the law is "closely drawn to match a sufficiently important interest." *Id.* (quoting *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 387–88 (2000)) (internal punctuation omitted); *see also Fed. Election Comm'n v. Mass.*

*Citizens for Life, Inc.*, 479 U.S. 238, 259–60 (1986) ("[R]estrictions on contributions require less compelling justification than restrictions on independent spending."). *Beaumont* upheld a federal law banning direct corporate contributions under this standard because the law was sufficiently tailored to important concerns about avoiding the appearance of corruption and preventing the circumvention of individual campaign contribution limits. 539 U.S. at 159–60. (Courts sometimes refer to these as "anti-corruption" and "anti-circumvention" interests. This ruling will do the same.)

In *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 879 (8th Cir. 2012), the Eighth Circuit relied on *Beaumont* to affirm the district court's refusal to strike down a Minnesota law banning direct corporate contributions to political campaigns. *Swanson* recognized that the reasoning of *Citizens United* left *Beaumont* "on shaky ground," *id.* at 879 n.12, but nonetheless felt compelled to apply *Beaumont* because it was directly on point and had not been expressly overruled, *id.* at 879. In the Eighth Circuit's words, "[r]ightly or wrongly decided, *Beaumont* dictates the level of scrutiny and the potential legitimacy of the interests [a state] advances by prohibiting corporate contributions to political candidates and committees." *Id.*; *accord, e.g.*, *Green Party of Conn. v. Garfield*, 616 F.3d 189, 199 (2d Cir. 2010) ("Although the [Supreme] Court's campaign-finance jurisprudence may be in a state of flux (especially with regard to campaign finance laws regulating corporations), *Beaumont* and other cases applying the closely drawn standard to contribution limits remain good law.").

In addition to *Beaumont*, cases like *Federal Election Commission v. Colorado Republican Federal Campaign Committee (Colorado II)*[2], 533 U.S. 431, 465 (2001), are relevant here because they recognize that expenditures made in coordination with political campaigns are entitled to less protection under the First Amendment than independent expenditures. The Supreme Court placed particular emphasis on anti-circumvention concerns in *Colorado II*, noting that coordinated expenditures could be used to exceed direct contribution limits. *See id.* ("We hold that a party's coordinated expenditures, unlike expenditures truly independent, may be restricted to minimize circumvention of contribution limits."). *Citizens United* did not disturb the distinction between independent and coordinated expenditures. *See SpeechNow.org v. Fed. Election Comm'n*, 599 F.3d

---

[2] The case commonly referred to as "*Colorado I*" is *Colorado Republican Federal Campaign Committee v. Federal Election Commission*, 518 U.S. 604 (1996), which held that a federal law prohibiting independent campaign expenditures by a party was unconstitutional as applied.

686, 693 (D.C. Cir. 2010) ("The independence of independent expenditures was a central consideration in [*Citizens United*].").

Together, *Citizens United*, *Beaumont*, *Colorado II*, and related cases establish that laws prohibiting corporations from making direct campaign contributions to campaigns, limiting coordination between outside entities and campaigns, and/or imposing disclosure and disclaimer requirements are more likely to survive First Amendment challenges than laws prohibiting corporations, advocacy groups, or political parties from making independent expenditures. *See generally Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734–35 (2011) (summarizing Supreme Court precedent). The question turns, then, to how to categorize section 68A.406(2)(a).

The Court need not—and will not—answer that question across-the-board because the record only contains information about one application of section 68A.406(2)(a) to one corporation, Acco. In that singular scenario, the law is not a restriction on independent campaign expenditures of the type at issue in *Citizens United* because Acco is not "independent," but rather is closely aligned with a candidate, Connor Christenson, whose father is Acco's primary decisionmaker. *See SpeechNow.org*, 599 F.3d at 693 ("By definition, independent expenditures are 'not made in concert or cooperation with or at the request or suggestion of such candidate, the candidate's authorized political committee, or their agents, or a political party committee or its agents.'" (quoting 2 U.S.C. § 431(17))). Indeed, the connection between Connor and Acco is so tight that the Ethics Board communicated directly with Connor about removing the sign from Acco's property and later reprimanded him for the delay in doing so. This is very different from *Citizens United*, which involved a non-profit organization that was not connected to or acting in concert with any candidate or campaign. Thus, *Citizens United* is not on point.

Instead, as Defendants argue, the situation here is more closely aligned with *Beaumont*, which upheld restrictions on direct corporate campaign contributions against a First Amendment challenge under the "closely drawn" standard. 539 U.S. at 158–62; *see also Swanson*, 692 F.3d at 879 (continuing to apply the *Beaumont* standard to direct contribution limits even after *Citizens United*). Similarly, the situation implicates *Colorado II*, which upheld limits on coordinated spending under the same "closely drawn" standard. 533 U.S. at 456. As *Colorado II* explained, "[t]here is no significant functional difference between a party's coordinated expenditure and a direct party contribution to the candidate." *Id.* at 464. In fact, in dicta, *Colorado II* spoke to the

9

very situation presented here: "While a candidate has no way of coordinating spending with every contributor, there is nothing hard about . . . coordinating spending with an inner circle of political associates or with his own family. Yet all of them are subject to coordinated spending limits upheld in *Buckley*[ *v. Valeo*, 424 U.S. 1, 53 n.59 (1976).]" *Colorado II*, 533 U.S. at 454–55.

As applied to Acco, section 68A.406(2)(a) is just as closely drawn to the anti-corruption and anti-circumvention interests as the laws upheld in *Beaumont*, *Colorado II*, and *Swanson*. In fact, the law serves *two* anti-circumvention goals here: (1) preventing individuals like Cris Christenson from using Acco to make campaign contributions that exceed what Cris can contribute individually; and (2) preventing in-kind contributions in the form of political advertising as a work-around to the absolute ban on direct corporate contributions. Accordingly, the Court is compelled under *Beaumont*, *Colorado II*, and *Swanson* to conclude that Plaintiffs have not shown an unconstitutional application of section 68A.406(2) at all, much less that the unconstitutional applications substantially outweigh the constitutional ones. *See NetChoice*, 603 U.S. at 723. Plaintiffs' facial First Amendment challenge therefore fails to the extent it rests on *Citizens United*.

Granted, the parties disagree about whether the placement of signs on Acco's property should be considered an "in-kind contribution" to Connor's campaign. As Plaintiffs note, it is unlikely that the Ethics Board or any other regulatory authority requires campaigns to report an "in-kind contribution" each time individual citizens put campaign signs in *their* yards. But this argument, even if accepted, does not change the First Amendment analysis. The crux of cases like *Beaumont* and *Colorado II* is that anti-circumvention and anti-corruption interests are squarely implicated when a corporation or political party works directly with a political candidate to provide something of value to help the candidate get elected. *See SpeechNow.org*, 599 F.3d at 693 (recognizing the important difference between coordinated and independent activity). Those cases therefore recognize that the First Amendment tolerates greater restrictions on coordinated activities between campaigns and outside actors than it does on independent expenditures. Whether the coordination takes the form of a direct contribution (*Beaumont*), coordinated spending (*Colorado II*), or something else is beside the point. What matters is whether the outside actor is coordinating with the campaign to provide something of value. If so, the restrictions are evaluated under the "closely drawn" standard.

Here, the record shows, and common sense confirms, that the placement of the campaign sign on Acco's property added value to Connor's campaign. Indeed, this is self-evident from the

fact that Connor and Cris put the signs up at all. Surely they were not engaging in a meaningless gesture. The exact value is subject to debate, but Defendants presented unrebutted evidence that it costs hundreds or even thousands of dollars per month to rent billboard space in the Des Moines metro area, depending on location. Thus, as applied to Acco, the record shows that the Ethics Board used section 68A.406(2)(a) to prohibit coordinated activity between a corporation and campaign that provided value to the candidate. Under *Beaumont*, *Colorado II*, and *Swanson*, the law does not run afoul of the First Amendment in these circumstances because the application of the law is closely tied to the anti-circumvention and anti-corruption goals.

The outcome might be different if a corporation with no connection to a political campaign created and displayed its own sign in support of a candidate. Such uncoordinated activity arguably would constitute the type of independent expenditure to which strict scrutiny applies under *Citizens United*. Plaintiffs have not, however, attempted to show the application of section 68A.406(2)(a) to anyone except themselves. Accordingly, they have not shown that any unconstitutional applications of section 68A.406(2)(a) substantially outweigh the constitutional applications. *See NetChoice*, 603 U.S. at 723–24. Their facial constitutional challenge therefore fails insofar as it rests on *Citizens United*.

3. Section 68A.406(2)(a) Is Not Facially Unconstitutional as a Content-Based Restriction on Speech Under *Reed v. Town of Gilbert*.

Plaintiffs argue, in the alternative, that section 68A.406(2)(a) is unconstitutional as a content-based restriction on speech. This argument revolves around *Reed v. Town of Gilbert*, 576 U.S. 155, 159 (2015), which struck down a town law that imposed greater restrictions on "signs directing the public to a meeting of a nonprofit group" than it imposed on signs conveying other messages, such as political or ideological messages. *Reed* held that the law was content-based and thus "presumptively unconstitutional" and subject to strict scrutiny review. *Id.* at 163–64, 169. The town law failed to satisfy this demanding standard because the only two justifications offered by the town—preserving aesthetic appeal and traffic safety—were "hopelessly underinclusive." *Id.* at 171. Plaintiffs argue that section 68A.406(2)(a) is likewise content-based because it allows corporations like Acco to display signs that "advocate[] the passage or defeat of a ballot issue" but not signs that advocate the election or defeat of a particular candidate. Moreover, the law treats some corporations differently than others, with "family farm operations" being permitted to place signs of all types on their land even when they are organized as corporations. *See id.* § 68A.406(1)(b).

Defendants argue that *Reed* does not provide the proper framework for Plaintiffs' First Amendment challenge because section 68A.406(2)(a) remains, first and foremost, a restriction on direct corporate contributions to political campaigns and/or coordination between corporations and campaigns. In other words, regardless of how Plaintiffs try to frame their argument, Defendants argue that *Beaumont*, *Colorado II*, and *Swanson* establish the governing standard. Moreover, Defendants argue that the only reason section 68A.406(2)(a) includes an exception for advocacy relating to ballot measures is to comply with the Supreme Court's decision in *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 768 (1978), which struck down under strict scrutiny review a Massachusetts law prohibiting banks and corporations from spending money to influence the outcome of ballot issues except in narrow circumstances. *Id.* at 768. Defendants argue that section 68A.406(2)(a) should not be interpreted as a content-based law simply because it includes an exclusion to address an on-point Supreme Court case. Instead, in their view, the exception helps *insulate* the law from a facial First Amendment challenge.

Neither side has cited—nor has the Court been able to locate—a case analyzing the interplay between *Bellotti*, *Beaumont*, and *Reed* in circumstances like those presented here. In dicta, *Reed* itself provides a clue about how this interplay might work, explaining that "a content-based law that restricted the political speech of all corporations would not become content neutral just because it singled out corporations as a class of speakers." 576 U.S. at 170. *Reed* did not, however, involve a law like section 68A.406(2)(a) that is designed to prevent corporations from directly contributing to or coordinating with political candidates but contains an arguably-content-based exception to address a Supreme Court ruling. This is a unique situation.

Although not directly on point, *Swanson* provides important guidance on how to proceed. In *Swanson*, the Eighth Circuit had to decide whether *Citizens United*, although ostensibly addressing only prohibitions on independent corporate expenditures, also meant that prohibitions on direct corporate campaign contributions were unconstitutional. 692 F.3d at 878. *Swanson* recognized that the ongoing viability of *Beaumont* was subject to debate but nonetheless applied the *Beaumont* standard because *Citizens United* did not expressly overrule it. *Id.* at 879. In support of this conclusion, *Swanson* quoted this admonition from *Agostini v. Felton*, 521 U.S. 203, 237 (1997): "We reaffirm that 'if precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the

case which directly controls, leaving to this Court the prerogative of overruling its own decisions'" (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

Similarly, in *Iowa Right to Life Committee, Inc. v. Tooker*, 717 F.3d 576, 602–03 (8th Cir. 2013), the Eighth Circuit interpreted a corporate contribution ban as a content-neutral restriction on speech that was governed by *Beaumont*'s closely-drawn standard even though the law arguably favored some messages (like independent corporate expenditures) over others (like direct contributions) and differentiated between corporations and labor unions. In refusing to apply strict scrutiny, *Tooker* explained that "[t]he contribution ban serves the purpose of preventing quid pro quo corruption or the appearance of such corruption" and thus "addresses Iowa's concern not with the message content, but rather with the corrupting effect that the act of communicating through contributions may have on recipients of those contributions." *Id.* at 602. As was the case in *Swanson*, the Eighth Circuit felt compelled in *Tooker* to continue to apply the *Beaumont* standard until and unless the Supreme Court expressly directed otherwise. *Id.* at 602–03.

Here, for reasons explained in the preceding section, the Court has concluded that the prohibition on campaign signs is properly understood, at least as applied to Acco, as a prohibition on direct contributions from corporations to political campaigns and/or a restriction on coordination between campaigns and outside entities. This makes section 68A.406(2)(a) like the laws the Supreme Court upheld in *Beaumont* and *Colorado II* under the "closely drawn" standard. It follows that the Court must apply the "closely drawn" standard here even though the logic of *Reed* may call into question whether that standard is correct. In other words, the proper course is to follow the Eighth Circuit's lead in *Swanson* and *Tooker* by treating *Beaumont* and *Colorado II* as the governing cases and "leaving to [the Supreme Court] the prerogative of overruling its own decisions." *United States v. Coonce*, 932 F.3d 623, 641 (8th Cir. 2019) (quoting *Rodriguez de Quijas*, 490 U.S. at 484). Because the Court already concluded that section 68A.406(2)(a) is constitutional under *Beaumont* and *Colorado II* in at least some of its applications (including the as applied to Acco itself), Plaintiffs' facial challenge fails under *NetChoice* when premised on their argument that the law is a content-based restriction on speech.

This result is unchanged by the fact that corporations can put up other types of signs on their property. The same distinction was present in *Beaumont*: corporations could engage in speech by spending money on advertising for their own businesses but not by contributing money directly to candidates. Yet the Supreme Court upheld the restrictions on direct contributions. *Swanson* and

*Tooker* then followed suit. Until and unless the Supreme Court says that *Beaumont* has been overruled, this Court must continue to apply it.

It also does not matter that "family farm operations" are excluded from the campaign sign restrictions even when the operations are organized as corporations. *See* Iowa Code § 68A.406(1)(b). Defendants have presented evidence that only a small percentage of Iowa farming operations fall within this exclusion, as more than ninety percent of Iowa farms are owned by individuals or entities other than corporations, all of whom could place campaign signs on their property even without the exclusion. (ECF 16-3, ¶ 27.) Of the small portion of Iowa farms owned by corporations, some of them are not "family corporations" (id.) and thus are prohibited from placing campaign signs on their property, just like Acco. This leaves a small slice of "family farm operations" that are organized as family corporations and therefore can take advantage of the exclusion.

The record is utterly silent on these entities. The Court does not know, for example, whether any of them place campaign signs on their property and, if so, whether this occurs in coordination with campaigns or independently. The Court therefore cannot tell if there has ever been an application of section 68.406(2)(a) to these entities at all, much less whether such an application implicates *Citizens United*, *Beaumont*, or *Colorado II*. This is fatal problem for Plaintiffs' facial challenge under the *NetChoice* standard.

Similarly, the Court does not know if family farm corporations are typically owned by shareholders from faraway places or if the owners instead usually live on the land. The phrase "*family* farm operations" implies the latter. If so, the word "corporations" is misleading in this context, as these are simply traditional family farmers. The fact that section 68A.406(2)(a) allows them to place signs on their property therefore would not call the validity of the law into question under the First Amendment because the anti-corruption and anti-circumvention goals underlying section 68A.406(2)(a) are directed toward traditional corporations, not family farmers. In other words, section 68A.406(2)(a) is still "closely drawn" to sufficiently important government interests even if it creates a narrow exception for family farmers who organize their operations through the use of the corporate form.

The analysis in the preceding two paragraphs is, of course, largely speculative. And that's the point. There is no information in the record to allow the Court to evaluate how the exclusion for "family farm operations" in section 68A.406(1)(b) affects the balance between constitutional

and unconstitutional applications of section 68A.406(2)(a). Because it is Plaintiffs' burden under *NetChoice* to show that the unconstitutional applications of the law substantially outweigh the constitutional ones, their facial challenge fails.

## V.   CONCLUSION.

Plaintiffs have raised interesting questions about the ongoing constitutionality of section 68A.406(2)(a) in the aftermath of *Citizens United* and *Reed*. They have not, however, met their burden of showing that the unconstitutional applications of the law substantially outweigh the constitutional ones. Their facial challenge therefore fails. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment (ECF 17) and DENIES Plaintiffs' Motion for Summary Judgment (ECF 9). The Clerk of Court is directed to enter Judgment for Defendants and close the case.

**IT IS SO ORDERED.**

Dated: May 29, 2026

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE